UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DAVID TRYBALSKI,**

    **Plaintiff,**

v.                                                **Case No. 8:24-cv-1376-AAS**

**FRANK BISIGNANO,**
**Commissioner of the Social**
**Security Administration,**[1]

    **Defendant.**
_____/

## ORDER

Plaintiff David Trybalski requests judicial review of a decision by the Acting Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including the transcripts of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the memoranda submitted by the parties, the Commissioner's decision is **REMANDED** for further consideration.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this suit. No further action needs to be taken to continue this suit through the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

I.  **PROCEDURAL HISTORY**

Mr. Trybalski initially applied for DIB on August 26, 2019, and was found not disabled on April 1, 2020. (Tr. 72–85). Mr. Trybalski reapplied for DIB on November 14, 2022, and alleged disability beginning on October 14, 2022. (Tr. 256). Disability examiners denied Mr. Trybalski's application initially and on reconsideration. (Tr. 105–07, 117–28). The ALJ held a hearing on February 23, 2024, and issued an unfavorable decision to Mr. Trybalski on April 4, 2024. (Tr. 14–29, 35–64).

On May 9, 2024, the Appeals Council denied Mr. Trybalski's request for review, making the ALJ's decision final. (Tr. 1–6). Mr. Trybalski now requests judicial review of the Commissioner's final decision. (Doc. 1).

II.  **NATURE OF DISABILITY CLAIM**

   A. Background

Mr. Trybalski was 34 years old on his alleged disability onset date. (Tr. 20, 27). Mr. Trybalski has a high school education and past work experience as a network operations specialist, a car salesperson, and as corporate support for a phone company. (Tr. 304–05). Mr. Trybalski alleged disability because of post-traumatic stress syndrome (PTSD), attention deficit/hyperactivity disorder (ADHD), autism, manic bipolar disorder, savant syndrome, left and right knee injury, spinal strain, tendonitis, and injuries to the upper left and upper right extremities. (Tr. 303).

### B. Summary of the Decision

The ALJ must follow five steps when evaluating a disability claim.[2] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful activity,[3] he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, he has no severe impairment and is not disabled. 20 C.F.R. § 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). At the fourth step, the ALJ determines the plaintiff's residual functional capacity (RFC).[4] *Id*. Fifth, if a claimant's impairments (considering his RFC, age, education, and past work)

---

[2] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

3 Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 404.1572.

4 A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. 20 C.F.R. § 404.1545(a)(1).

do not prevent him from performing work that exists in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

The ALJ determined Mr. Trybalski did not engage in substantial gainful activity since his alleged onset date. (Tr. 20). The ALJ found Mr. Trybalski had these severe impairments: depressive, bipolar, and related disorders; trauma- and stressor-related disorders; neck disorder; back disorder; disorder of the knee; disorder of the right upper extremity and bilateral hands; and obesity. (*Id.*). However, the ALJ found that none of Mr. Trybalski's impairments or any combination of his impairments met or medically equaled the severity of an impairment in the Listings. (Tr. 20–22).

The ALJ found Mr. Trybalski had the RFC to perform a reduced range of light work,[5] except:

> [Mr. Trybalski] can lift and/or carry 20 pounds occasionally; lift and/or carry 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. He may never climb ladders, ropes, or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He may never reach above the head with the right upper extremity. Mr. Trybalski is right-hand dominant and may only frequently handle and finger bilaterally. He must avoid concentrated exposure to

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

> hazards. Mr. Trybalski is able to understand, carry out, and remember simple, routine, and repetitive tasks; involving only simple, work-related decisions with the ability to adapt to routine workplace changes. He could tolerate frequent interaction with supervisors and coworkers, but no interaction with the general public. Mr. Trybalski would be off-task five (5%) percent of the day and miss one workday per quarter.

(Tr. 22).

Based on these findings, the ALJ determined Mr. Trybalski could not perform his past relevant work. (Tr. 26). Using the assistance of a vocational expert (VE), the ALJ then determined Mr. Trybalski can perform other jobs existing in significant numbers in the national economy. (Tr. 27–28). Specifically, Mr. Trybalski can perform the jobs of price maker, housekeeping cleaner, and routing clerk. (*Id.*). As a result, the ALJ found Mr. Trybalski not disabled. (Tr. 29).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports her findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the

5

conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Mr. Trybalski raises these two issues on appeal: (1) whether the ALJ properly considered the opinion evidence regarding Mr. Trybaliski's mental impairments, and (2) whether the ALJ adequately considered Mr. Trybalski's subjective complaints.

### 1. Whether the ALJ Properly Evaluated the Opinion Evidence Regarding Mr. Trybaliski's mental impairments.

Mr. Trybalski first argues the ALJ failed to "meaningfully consider" the opinions of the Veteran Administration (VA) psychologists and psychiatrists who evaluated and treated Mr. Trybalski. (Doc. 17, pp. 3–10). In response, the Commissioner contends the ALJ complied with new agency regulations governing the treatment of decisions by other governmental agencies and nongovernmental entities (e.g., the VA). (Doc. 21, pp. 12–18).

Regarding the mental health opinions of Dr. Heather Hernandez, Ph.D., and Dr. James Levasseur, Ph.D., the ALJ found their opinions "persuasive." (Tr. 22). However, the ALJ failed to address all the limitations Dr. Hernandez and Dr. Levasseur assigned in their mental RFC assessments. (Tr. 89–92, 97–103). Specifically, the ALJ's mental RFC determination does not include Dr. Hernandez's and Dr. Levasseu's opinions that Mr. Trybalski would have "moderate" limitations "interacting with others." (Tr. 21–22, 90, 99). The ALJ assigned Mr. Trybalski a limitation of "no interaction" with the general public, but then assigned an ability to "frequently" interact with supervisors and co-workers. Had the ALJ assigned a limitation to no interaction or occasional interaction with co-workers and supervisors, the VE testimony may have changed. (Tr. 21–22). The ALJ fails to explain why Mr. Trybalski would be able

7

to interact with co-workers and supervisors frequently, but not the general public.

The ALJ also failed to include other limitations the state agency consultants assigned. Dr. Hernandez opined on February 15, 2023, and Dr. Levasseur opined on March 31, 2023, that Mr. Trybalski had these additional "moderate limitations:"

- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- The ability to accept instructions and respond appropriately to criticism from supervisors;

- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

- The ability to respond appropriately to changes in the work setting.

(Tr. 92, 102). The ALJ's mental RFC determination fails to address or explain why he does not include these other limitations despite finding Dr. Hernandez's and Dr. Levasseu's opinions to be "persuasive." (Tr. 25). Indeed, the ALJ does not assign Mr. Trybalski any adaptation limitations and finds him capable of "adapting to routine workplace changes" which is contrary to Dr. Hernandez's and Dr. Levasseur's opinions of being "moderately" limited in responding appropriately to changes in the work setting.

8

An ALJ evaluates the persuasiveness of a medical opinion or prior administrative medical finding based on these factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(a)–(c). An ALJ *must* articulate how he considered the supportability and consistency of an opinion in determining its persuasiveness. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The ALJ may, but is not required to, explain how he considered the remaining factors. *Id*.

"Supportability" is defined as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In other words, is the medical source's opinion supported by their own explanation and treatment notes. "Consistency" is defined as "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In other words, the consideration is whether medical opinion consistent is with the other medical evidence in the record.

Although the ALJ is not required to adopt all parts of a persuasive opinion, the ALJ did not discuss why he found some limitations persuasive and

9

others, proposed in the same opinion, unpersuasive. As stated above, the ALJ determined the opinions of Dr. Hernandez and Dr. Levasseur were persuasive. (Tr. 22). The ALJ adopted the findings of mild cognitive limitations, but failed to discuss how he assessed, and why he omitted, the social limitations noted. (Tr. 22, 25, 92, 102). *See Malak v. Comm'r of Soc. Sec.*, 131 F.4th 1280, 1286 (11th Cir. 2025) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), *including any related symptoms* . . . may cause physical or mental limitations or restrictions that may affect their capacity to do work-related physical and mental activities.") (emphasis added) (citations omitted).

Further, the ALJ inadequately discusses the VA psychiatric treatment notes of Dr. Kyle Stephens, Psych. D., who treated Mr. Trybalski from February 2022 through the date of the decision. (Tr. 882–85, 892–96, 990–1270). Regarding Dr. Stephens's opinion, the ALJ states:

> Memory was intact and fund of knowledge was normal. Thought process was linear, logical, and goal-directed. He reported visual hallucinations but did not appear to respond to internal stimuli. Insight and judgement were fair. Suicidal and homicidal ideations were denied (7F/68). Mental status examinations conducted in September 2022 and December 2022 had similar findings (7F15,16). The metal status examinations conducted during 2023 also had similar findings (9F/12, 10F/4-5).

(Tr. 24).

Besides this statement, the ALJ does not determine the consistency of Dr. Stephens's opinions and does not adequately discuss his treatment notes. This, along with the ALJ's failure to properly consider the consistency and supportability of the entirety of Dr. Hernande's and Dr. Levasseu's opinions, requires remand.

### 2. Whether the ALJ Properly Considered Mr. Trybalski's Subjective Complaints.

Mr. Trybalski contends the ALJ improperly evaluated his subjective complaints. (Doc. 17, p. 12). The Commissioner contends substantial evidence supports the ALJ's evaluation. (Doc. 21, pp. 18–24).

Because remand is appropriate, the court may decline to address this issue. However, the court finds this issue also requires remand. When evaluating a plaintiff's subjective complaints, an ALJ must determine whether there is a medically determinable impairment. Then, the ALJ determines whether objective medical evidence confirms the alleged severity of the symptoms or evidence establishes that the plaintiff's medical condition could reasonably cause the alleged symptoms. *See* 20 C.F.R. § 404.1529(a)–(b). Without objective medical evidence confirming severity, the ALJ must assess the intensity and persistence of symptoms reasonably caused by a medically determinable impairment. *Id.* at § 404.1529(c)–(d). An ALJ may not reject a plaintiff's subjective complaints solely because of an absence of objective

11

medical evidence. *Id.* at § 404.1529(c)(2). Instead, the ALJ must assess and articulate the extent to which the subjective complaints are consistent with the record. *Id.* at § 404.1529(c)(3)–(c)(4).

Here, the ALJ identified the following severe impairments: "depressive, bipolar, and related disorders; trauma- and stressor-related disorders; neck disorder; back disorder; disorder of the knee; disorder of the right upper extremity and bilateral hands; obesity." (Tr. 20). The ALJ determined Mr. Trybalski's impairments could reasonably cause his symptoms but also determined that Mr. Trybalski's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23). As for Mr. Trybalski's mental impairments, the ALJ reviewed normal psychiatric findings from different physicians spanning 2020 to 2023. (Tr. 24–25). The ALJ did not discuss discrepancies between the medical opinions and Mr. Trybalski's subjective complaints, such as whether Mr. Trybalski experienced homicidal and suicidal ideations or whether Mr. Trybalski could control his behavior around supervisors and coworkers. (Tr. 24–25, 46–52). The ALJ did not articulate why he found the medical opinions more persuasive than Mr. Trybalski's statements.

Further, Mr. Trybalski's ability to behave in clinical settings or care for his daily needs does not preclude a disability finding. (Tr. 24); *see Schink v.*

*Comm'r of Soc. Sec.*, 935 F.3d 1245, 1263 (11th Cir. 2019) ("It is not enough merely to point to positive or neutral observations that . . . [prove] no more than that the claimant's impairments are not all-encompassing."); *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (participation in everyday activities of short duration does not disqualify a claimant from disability).

### IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **REMANDED**. The Clerk is directed to enter judgment for Mr. Trybalski and close the case.

**ORDERED** in Tampa, Florida, on August 1, 2025.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge